# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMAL SHARIF (A-88447), | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 12 C 2309<br>)<br>) Judge John W. Darrah |
| DR. PARTHASARATHI GHOSH, et al., | )<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jamal Sharif (also known as Donald Nobles), is an inmate at Stateville Correctional Center. He initiated this 42 U.S.C. § 1983 action against former Stateville Medical Directors Dr. Parthasarathi Ghosh, Dr. Bautista, and Dr. Carter, as well as Kevin Halloran, Chief Executive Officer of Wexford Health Sources, a Pennsylvania based corporation that contracts to provide medical services to Illinois inmates. Plaintiff alleges that he suffered an injury to his right knee in July 2010, and that, although he received some treatment, the Defendants refused to refer him for surgery to his knee.

Currently pending before the Court is a motion to dismiss filed by Dr. Ghosh, Dr. Bautista, and Halloran (hereinafter "Defendants"). Dr. Carter has not yet been served. Defendants contend that Plaintiff's complaint demonstrates that neither Dr. Ghosh nor Dr. Bautista acted with deliberate indifference, given the treatment they provided, and that Halloran had no personal involvement with Plaintiff's medical care. Plaintiff has responded.

For the following reasons, the motion is denied as to Dr. Ghosh, but granted for Dr. Bautista and Halloran. Upon further review of the complaint, the Court also dismisses Dr. Carter, against whom Plaintiff does not state a claim and who should have been dismissed on initial review of the complaint.

Also upon further review of the complaint, and considering Plaintiff's recent motion for the appointment of an orthopaedic specialist to examine Plaintiff's knee condition, the Court appoints counsel for Plaintiff.

## STANDARD OF REVIEW

When reviewing a motion to dismiss, a court considers to be true all well pleaded allegations, as well as any inferences reasonably drawn therefrom. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The purpose of a motion to dismiss is not to determine whether a plaintiff will ultimately succeed on his claims, but whether the complaint sufficiently asserts facts which, when accepted as true, state a valid and plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the notice pleading standard of Fed. R. Civ. P. 8(a)(2), a complaint need not contain detailed factual allegations, but it must present more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must at least "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 -77 (7th Cir. 2007). If a plaintiff pleads facts demonstrating that he has no claim, a court may dismiss the complaint. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Tamayo*, 526 F.3d at 1086 ("a party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims").

## THE COMPLAINT

Plaintiff's complaint consists of 34 allegations and 34 pages of medical records, grievances, and affidavits by Plaintiff attached as exhibits. The Court may consider the exhibits as part of the complaint. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also* Fed. R. Civ. P. 10(c).

Plaintiff's complaint alleges the following. On July 29, 2010, he injured his right knee while playing basketball. (Compl. ¶ 13.) He attempted to see Physician's Assistant Williams on August 4, 2010, but was told to return to his cell. On August 14, 2010, P.A. Williams examined both of Plaintiff's knees, ordered x-rays, provided a knee support for the right knee, and prescribed Tylenol. (*Id.* at ¶¶ 14-15.) On October 26, 2010, while Plaintiff was in a holding cell, he attempted to speak to Dr. Ghosh about his knee pain and need for an MRI. Dr. Ghosh allegedly refused to speak to him, at which time, Plaintiff wrote to Dr. Ghosh but received no response. (Compl. at ¶ 16.) Plaintiff filed an emergency grievance on January 3, 2011, about "excruciating pain" he experienced during the night in his right knee. (Compl. at ¶ 17.) Warden Marcus Hardy responded that the grievance was not an emergency and that Plaintiff should file the grievance in the normal manner. (Compl., Exh. G.) On January 10, 2011, Dr. Ghosh examined Plaintiff's knees and scheduled an MRI. (Compl. at ¶ 18.)

On February 4, 2011, Plaintiff attempted to see medical personnel for pain; he was taken to a holding cell and waited for several hours, but was returned to his cell without seeing anyone. (Compl. at ¶ 19.) On March 14, 2011, he wrote a letter to Dr. Ghosh, stating that he was still experiencing a lot of pain and asking how long he had to wait for the MRI. (Compl., Exh. J-II.) He described the pain as going all the way to his foot and noted that kneeling caused excruciating pain. (*Id.*) On April 25, 2011, he submitted another emergency grievance, stating that his pain had worsened since January 10, 2011, when Dr. Ghosh recommended that Plaintiff receive an MRI, but that he had not yet had that test. (Compl., Exh. K.) On April 27, 2011, an MRI was performed. (Compl. at ¶ 20.) Plaintiff contends the MRI revealed a torn medial meniscus. (*Id.*) The report of the MRI, which is attached to the complaint, states the following:

A trace joint effusion is present. Trace pretibial and prepatellar subcutaneous edema is noted. A chronic appearing sepated and loculted Baker's cyst measuring 2.0 x 4.0 cm is noted.

Patchy and linear increased signal of the medial meniscus body and posterior horn extending to the surface is noted, likely represents degenerative changes with slight tears. Mild degenerative changes are also noted in the lateral meniscus.

The anterior and posterior cruciate ligaments are intact. The lateral collateral ligament is intact. Increased helerogeneous signal is noted in the intact medial collateral ligament with superficial surrounding edema noted. The extensor mechanism is intact.

No muscle atrophy is identified. Irregularity to the cartilage medial compartment is noted. Fissuing of the patellar cartilage worst[sic] in the medial apical compartments with chondromalacia and reactive subchondral edema of the patella is noted. Subchondral edema is noted in the central portion of the lateral tibial plateau.

(Compl., Exh. M.)

The Impression by the radiologist states:

IMPRESSION:
1. Tricompartmental degenerative joint disease with mild to moderate chondromalacia and degenerative tears of the medial meniscus.
2. Medial collateral ligament sprain with mild surrounding edema.
3. Chronic appearing Baker's cyst

(Compl., Exh. N.)

In June of 2011, Plaintiff filed a grievance stating that he required surgery to resolve the medial meniscus tear shown on the MRI. (Compl., Exh. O.) A grievance officer responded that an appointment had been made with Dr. Bautista in July 2011. (*Id.*) Dr. Bautista examined Plaintiff on July 19, 2011. According to Plaintiff, Dr. Bautista told him that surgery was not necessary but that a torn medial meniscus could heal with therapy. (Compl. ¶ 21.) Plaintiff wrote a grievance about his visit with Dr. Bautista, stating that Dr. Bautista recommended therapy, as opposed to surgery, and "added my name to the therapy list - which is so lengthy, it will be another several years waiting for relief."

(Compl., Exh. P.) The copy of the grievance includes no response. (*Id.*) According to the complaint, Plaintiff's visit with Dr. Bautista in July 2011 is Bautista's only involvement with Plaintiff's claims.

On August 19, 2011, Plaintiff was examined by a nurse and Dr. Carter. After the examination, which included review of the MRI report, Dr. Carter told Plaintiff that there was no tear of his medial meniscus, that surgery was unnecessary, and that therapy was all that was needed. (Compl. ¶ 22.) On September 29, 2011, Plaintiff received a cortisone injection in his right knee, which Dr. Carter administered. (Compl. ¶ 24.) Plaintiff was scheduled for a follow-up examination in two weeks, which did not occur. (*Id.*) Plaintiff has heard that, if surgery is not performed within two years of a serious knee injury, permanent damage can result. (Comp. ¶ 25.)

In August 2011, Plaintiff wrote Kevin Halloran (Chief Executive Officer of Wexford) a letter, stating that he experiences pain and loss of sleep from his right knee injury, that he had been unable to see the results of the MRI taken in April 2011, and that Drs. Ghosh, Bautista, and Carter refused to refer him for surgery but instead told him that his knee injury could heal with therapy. (Compl., Exh. W.) Plaintiff stated in the letter that he believed all three doctors were turning a blind eye to his serious medical condition based upon Wexford's cost-cutting policies. (*Id.*)

Plaintiff states in his complaint that he continues to wake up during the night with pain in his right knee; he walks with a limp; it is painful to walk for a long period of time or to jog; and his knee buckles, swells, and continues to cause pain. (Compl. ¶¶ 27-29.) Plaintiff contends that Drs. Ghosh, Bautista, and Carter acted with deliberate indifference by not referring him for surgery, for relying on one test result to conclude that surgery was unnecessary, and for refusing to send him for further tests to attempt to determine the source of his pain. (Compl. ¶¶ 31-32.) Plaintiff further asserts that Wexford

officials were or should have been aware of his problem, and that Wexford had a policy or custom of allowing its doctors to be deliberately indifferent to his painful knee condition. (Compl. ¶¶ 33-34.)

## DISCUSSION

The above-described allegations seek to assert claims of deliberate indifference to a serious medical need. To state such a claim, a plaintiff must be able to demonstrate both (1) an objectively serious medical condition; and (2) that the defendant acted with deliberate indifference to the condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). To satisfy the second prong, a plaintiff must be able to demonstrate a sufficiently culpable intent of the defendant and show that he or she was actually aware of the plaintiff's serious medical need but disregarded it. *Id.; Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). Plaintiff therefore must allege facts that, if true, would establish that he suffered a serious medical condition and that the Defendants (both the doctors and Kevin Halloran) were actually aware of Plaintiff's condition but refused to take reasonable measures to resolve it. *Arnett*, 658 F.3d at 750. With respect to claims against Kevin Halloran in his official capacity, Plaintiff must state facts indicating that Wexford maintained a policy or custom that violated his right to adequate medical care, which caused him harm. *Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (private contractors that provide medical services to prisoners are treated like municipalities for purposes of 42 U.S.C. § 1983).

Defendants do not address at this time whether Plaintiff's knee injury was a serious medical condition, and the Court will thus assume, at least for purposes of Defendants' motion, that Plaintiff's allegations satisfy the first prong of the deliberate indifference test. Defendants instead argue that the records attached to the complaint demonstrate that Plaintiff was being treated for his knee condition,

that the Defendants did not ignore or fail to take reasonable steps to address his condition, and that Plaintiff's claims are simply that he disagreed with their treatment. Defendants are partly correct.

Neither negligence, malpractice, nor a difference of opinion between an inmate and a prison's medical personnel constitute deliberate indifference, *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). The defendant must have "acted with a sufficiently culpable state of mind," something akin to an intentional disregard or recklessness. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Nevertheless, "delaying necessary treatment[,] thus aggravating the injury or needlessly prolonging an inmate's pain" can establish deliberate indifference. *Berry*, 604 F.3d at 441; *see also Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.2010). Prison doctors cannot simply ignore an inmate's complaints of severe pain. *Gonzalez v. Feinerman*, 663 F.3d 311, 314–15 (7th Cir. 2011).

Although Dr. Ghosh examined Plaintiff in January 2011 and scheduled an MRI, Plaintiff alleges that Dr. Ghosh ignored his complaints in October 2010, as well as in February, March, and April 2011, after the MRI was ordered. Plaintiff's allegations and records attached to the complaint indicate that there was, at the very least, a period of four months from the date Dr. Ghosh ordered an MRI and when it was performed, during which time Plaintiff complained of pain in his knee yet received no response. If his allegations are true, which this Court must assume at this stage of the case, Plaintiff may be able to prove that Dr. Ghosh ignored Plaintiff's complaints of pain. A more fully developed record may demonstrate that Plaintiff's complaints of pain did not go unaddressed; however, such cannot be determined based upon the complaint and materials attached thereto. The motion to dismiss must be denied for Dr. Ghosh.

With respect to Dr. Bautista, however, Plaintiff does not allege that Dr. Bautista ignored his complaints of pain or refused to treat him. Rather, he alleges only that Dr. Bautista refused to refer him for surgery and, instead, indicated that Plaintiff's injury could heal with physical therapy. According to Plaintiff, Dr. Bautista examined Plaintiff, reviewed the MRI from two months earlier, and informed Plaintiff that his knee condition could be resolved with physical therapy, as opposed to surgery. Plaintiff alleges at most a difference of opinion as to whether surgery was needed. Plaintiff suggests that Dr. Bautista, as well as Dr. Carter, refused to refer him for surgery despite medical evidence indicating that surgery was needed, but the records attached to the complaint show otherwise. The MRI revealed only minor degenerative tears, mild to moderate chondromalacia, and a Baker's cyst, but the report does not indicate a need for surgery. Plaintiff's allegations that Dr. Bautista recommended physical therapy over Plaintiff's requests for surgery do not state a claim upon which relief can be granted. "The Constitution is not a medical code that mandates specific medical treatment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (brackets omitted). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Constitution]'s purview." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Accordingly, the motion to dismiss is granted for Dr. Bautista, and he is dismissed as a Defendant.

As to claims against Kevin Halloran in his individual capacity, Plaintiff alleges that he wrote him one letter in August 2011 complaining about his painful knee condition and about Drs. Ghosh, Bautista, and Carter turning a blind eye to treating the condition properly. Although a superivsory official is more removed and has less personal involvement with an inmate's medical care, a claim may be stated against Halloran if he was aware that Plaintiff suffered a serious medical condition, could have taken reasonable

steps to resolve it, but refused to do so. *See Young v. Wexford Health Sources*, No. 10 C 8220, 2012 WL 621358 at *7 (N.D. Ill. Feb. 14, 2012) (Pallmeyer, J.) (denying motion to dismiss by Halloran based upon a lack of personal involvement). Plaintiff's letter to Halloran, however, does not indicate such a situation. In his letter, Plaintiff described his medical history, stated that Dr. Ghosh informed him that surgery would be performed if the MRI showed a torn meniscus; and complained that Dr. Bautista told him that surgery was not needed and that Dr. Carter later informed Plaintiff that there was no torn meniscus but only arthritis, for which physical therapy was recommended. (Compl., Exh. W.) Although Plaintiff's letter accused the doctors of "turning a blind eye" to his condition, the letter's description of his medical history to Halloran (like the allegations in his complaint) indicates only a difference of opinion between the doctors and Plaintiff as to his condition and how best to treat it. (*Id.*) Considering Plaintiff's allegations and the letter he forwarded to Halloran, it is clear that Plaintiff has not stated a claim of deliberate indifference against Halloran in his individual capacity.

As to allegations against Halloran in his official capacity, Plaintiff only speculates that a custom or policy exists to not refer inmates for surgeries in order to save money. Although a plaintiff need not include extensive facts in his complaint, he must at least assert allegations that "plausibly suggest ... a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Services, Inc.*, 496 F.3d at 776 -77; *see also Tamayo*, 526 F.3d at 1083 (allegations must show it is plausible, rather that merely speculative, that a plaintiff is entitled to relief based upon the claim asserted). Plaintiff's contention of a policy or custom of inadequately treating inmates or refusing to order tests for them based upon financial reasons is at best speculative, as well belied by the records and attachments to his complaint. Accordingly, the claim against Halloran in his official capacity is dismissed, and he is dismissed from this case.

Although Dr. Carter has not yet been served and has not moved to dismiss the claims against him, the Court's further review of the complaint reveals that Plaintiff does not state claims against Dr. Carter and that the Court should not have allowed the complaint to proceed against him. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("the court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted"). Similar to his allegations against Dr. Bautista, Plaintiff asserts that, in August 2011, Dr. Carter examined Plaintiff, reviewed the MRI, told Plaintiff that there was no medial meniscus tear and that therapy was all that was needed, and then later administered a steroid injection to Plaintiff's knee in September 2011. (Compl. at ¶¶ 22, 24.) Plaintiff's allegations against Dr. Carter, like his allegations against Dr. Bautista, state at most a difference of opinion as to the course of treatment for Plaintiff's knee condition. Such allegations do not support a claim of deliberate indifference. Although the Court initially allowed the complaint to proceed against Dr. Carter, further review reveals that the claims against him should have been dismissed on initial review of the complaint.

Accordingly, the claims against Dr. Carter, along with Dr. Bautista and Halloran, are dismissed. Plaintiff may seek to submit an amended complaint that states claims against these Defendants if his allegations indicate deliberate indifference, as opposed to simply a difference of opinion about the course of treatment for his knee condition. The current complaint, however, does not state claims against these Defendants and they are dismissed.

Although the Court dismisses the claims against Dr. Bautista, Dr. Carter, and Kevin Halloran, the Court notes that Plaintiff states, in both his response to the motion to dismiss and a motion he recently filed seeking the Court to appoint an independent orthopedic specialist, that he continues to experience "persistent pain, knee buckling, loss of sleep ... on [a] daily basis." (R. 41, Pl's Opposition to Motion to Dismiss at 2; *see also* R. 54, Pl's Motion for Physical Examination Pursuant to Rule 35(a).)

Plaintiff's complaints of current problems with his knee are not associated with the Defendants of this case, all of whom have left Stateville. Such claims would have to be included in an amended complaint. Given that Plaintiff states that he is currently experiencing the same, if not worse, pain and problems with his knee, the Court will appoint counsel to represent Plaintiff.

## **CONCLUSION**

For the reasons stated herein, Defendants' motions to dismiss. [31] is granted in part and denied in part. The motion is denied for Dr. Ghosh, and Plaintiff may proceed with his claim that Dr. Ghosh ignored Plaintiff's complaints of pain. The motion is granted for Dr. Bautista and Kevin Halloran and the claims against these Defendants are dismissed. The Court, upon further review of the complaint, dismisses the claims against Dr. Carter. Kevin Halloran, Dr. Bautista, and Dr. Carter are dismissed from this case. Plaintiff's Motion for a Physical Examination Pursuant to Fed. R. Civ. P. 35(a) [54] is denied. The Court appoints Stephen Charles Hackney, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, IL 60654, (312)862-2000, to represent Plaintiff in accordance with counsel's trial bar obligations under N.D. Ill. Local Rules 83.11(g) and 83.37. Within 60 days following the date the opinion is entered, counsel should enter an appearance and communicate with Plaintiff. A status hearing is set for March 28, 2013, at 9:30 a.m., at which time the filing of further pleadings may be discussed.

ENTER: *John W. Darrah*
John W. Darrah
United States District Court Judge

DATE: 1/18/13